Paul BURNETTE and wife, Pauline
Burnette, Plaintiffs–Appellants,

v.

Gilbert D. PICKEL, James W. Pickel,
and Stephen J. Parsons,
Defendants–Appellees,

v.

Roma BURNETTE, Third–Party
Defendant–Appellee.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Jan. 4, 1993.

Rehearing Denied Feb. 2, 1993.

Application for Permission to Appeal
Denied by Supreme Court
July 6, 1993.

Gerald Largen, Kingston, for plaintiffs-appellants.

Robert L. Badger, Kingston, for defendants-appellees.

Browder G. Williams, Harriman, for third-party defendant-appellee.

## OPINION

LEWIS, Judge.

Plaintiffs have appealed from an adverse judgment rendered by the trial court. Plaintiffs had originally filed a tort action in the Circuit Court for Roane County and alleged that defendants had trespassed upon and destroyed property belonging to plaintiffs. Plaintiffs admitted in their complaint that the land in dispute was not in plaintiffs' deed, but plaintiffs claimed ownership through adverse possession. Defendants filed a third-party complaint against their grantor, third-party defendant, Roma Burnette. The Circuit Court determined that a boundary line dispute must be resolved initially and bifurcated the case by sending the boundary line issue to the Chancery Court for a determination of what portion of the disputed tract each of the parties owned. The Chancellor found for defendants and declared their right to the disputed land. All other issues were reserved to the Circuit Court. This appeal involves the findings of the Chancellor that plaintiffs did not have a valid claim to the real estate at issue.

The facts out of which this case arose are as follows:

In 1935, Tom and Martha Burnette (husband and wife) acquired a tract of land in the Kingston area. They lived on the land for the remainder of their lives. In 1946, Howard[1] and Paul, sons of Tom and Martha Burnette, were living with their parents at the family home. Paul married Pauline and Howard married Roma. Martha Burnette[2] decided to and did deed a portion of the land to Paul and Pauline so they might build a marital residence. At the same time, she also deeded the remainder of the land to Howard and Roma, but reserved a life estate for herself and Tom Burnette. Howard and Roma continued to live with Tom and Martha until the death of the elder Burnettes. Howard died in 1972 and Roma lived in the home until she became ill. Thereafter, Roma lived in the home off and on until 25 March 1988, when she sold the property to defendants.

A dispute arose between plaintiffs and defendants regarding the location of the boundary line of the property of each. Plaintiffs alleged that two parcels the defendants claimed to have purchased from Roma were actually part of the land deeded to plaintiffs by Martha Burnette in 1946. At issue is a more or less rectangular plot between the undisputed parcels and a triangular area behind the home of Paul and Pauline. The plaintiffs alleged that Martha had walked the property with them in 1946 to identify what land was being deeded and had also given them a survey purporting to show the land being transferred. Evidently the survey and deed description did not match in regard to the property being given to Paul and Pauline.

During a survey conducted for the sale from Roma Burnette to the defendants, it came to the attention of Paul that part of what he considered his property[3] was in the deed to Howard and Roma. Paul challenged the surveyor and claimed to be in possession of the disputed property.

The defendants proceeded with the purchase in spite of the controversy, and after the sale was closed, razed an old garage built many years prior by Paul. They also installed a fence along what they considered to be their property line.

Plaintiffs then filed this suit in an attempt to have the disputed land declared

---

1. Many of the individuals involved in this dispute have the same surname. Therefore, members of the Burnette family are frequently referred to by their first names for the sake of clarity. No disrespect is intended.

2. The real estate was titled in the name of Tom and Martha Burnette and both signed each deed. Martha's name is referenced because she seems to have been the instrumental party in the relevant transaction. The omission of Tom is merely for ease of reference.

3. In 1948, Paul built a free-standing garage and constructed a driveway. These were used until 1983 when a workshop and garage were built on the other side of the lot. The older garage was then used mainly for storage. The old garage and driveway are on one of the parcels of disputed property, which is, more or less, rectangular in shape.

theirs. They also alleged that the defendants were guilty of trespass, destruction of real property, coercion, deliberate infliction of mental and emotional distress, and outrageous conduct. Plaintiffs sought both compensatory and punitive damages.

Plaintiffs filed this suit in the Circuit Court on 20 June 1988. Defendants answered the complaint and filed a third-party complaint against the seller of the property, Roma Burnette. On 29 January 1989, Roma filed a motion to dismiss the third-party complaint which was later denied. Roma died on 12 July 1989 and the administratrix of her estate was substituted for the decedent as the third-party defendant. A motion was then made to dismiss the third-party defendant because there had been no revival of the action against Roma's estate within the time required by law. It was further contended that the court no longer had subject matter jurisdiction. This motion was also denied. The Circuit Court ordered a bifurcated proceeding and transferred the boundary line dispute to Chancery Court. The Chancellor denied the plaintiffs motion for summary judgment and then recused himself due to conflicts of interest. A substitute judge heard the case and ruled in favor of defendants. Final judgment was entered and plaintiffs appealed.

At trial, the evidence showed that Paul, in fact, knew the rectangular property actually belonged to Howard and Roma but that he had been told by his mother Martha before her death that he could use the driveway area so long as he lived on his property. Paul alleges that Howard promised to deed the strip of land to him eventually, but admitted that Roma had not been involved in the discussion. Defendants point out that even if Howard did make such a statement, it would have no binding effect, since the property was titled in the name of Howard and Roma as tenants by the entirety.

Plaintiffs claim title to the triangular area behind the house by virtue of the deed from Tom and Martha. However, if the deed does not include the triangular area, they claim ownership by adverse possession. They have supposedly planted trees, flowers, etc. on the property for many years and had continuous possession. However, the defendants countered the adverse possession claim by arguing that the plaintiffs did not control the property to the exclusion of Howard and Roma Burnette and, therefore, did not have adverse and exclusive use of the land.

■ Plaintiffs' first issue is: "Was it proper for the learned Circuit Judge, acting *sua sponte*, to order that the case be bifurcated, and that there be a trial in the Chancery Court as a boundary line dispute, while retaining the tort claims in the Circuit Court?"

The order bifurcating this case was entered by the Circuit Judge. So far as the record shows, no objection was made to the bifurcation. If the plaintiffs-appellants objected to the bifurcation, they could have done so in the trial court and, if overruled, they could have sought a discretionary appeal pursuant to Tennessee Rule of Appellate Procedure 9 prior to going to trial in the Chancery Court on the boundary line issue.

Tennessee Code Annotated, Section 16–11–106, provides in pertinent part that "[t]he chancery court has jurisdiction to hear and determine all cases in which the boundary line or lines of adjoining or contiguous tracts of land is one [of] the question[s] at issue...."

In this instance, the Circuit Judge correctly determined that an action for damages for trespass would require the ascertainment of whether the plaintiffs owned the land on which the damages were claimed to have been done.

If it be considered error for the Circuit Judge to have bifurcated the issues in this case and referred the boundary line issue to the Chancery Court, we are unable to consider such an issue. Rules of the Court of Appeals, Rule 6(a) 2, provides that the appellant must show in his written argument before the court "how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded."

We find nothing in the record to show that the appellants objected to the boundary line issue being tried in the Chancery Court. In the absence of appellants' compliance with Rule 6, Rules of the Court of Appeals, we find that this issue is without merit.

■ Plaintiffs' second issue is: "If such *sua sponte* bifurcation and transfer were proper and appropriate, was it proper for the Chancellor to try this cause without the intervention of a jury to try the facts, when a jury had been demanded in the initial complaint?"

Plaintiffs did request a jury trial when they filed their complaint in the Circuit Court. When the boundary line issue was transferred to the Chancery Court for trial, no demand for a jury in Chancery Court was made by the plaintiffs. The record fails to disclose that the plaintiffs objected to the bench trial.

Plaintiffs have, in this issue as in the first issue, failed to comply with Rule 6 of the Rules of the Court of Appeals.

Generally, to put a trial court in error, it must be shown that the aggrieved party objected and that the court ruled on the objection, or if the court did not rule on the objection, the aggrieved party must have insisted on a ruling and show that the court then failed or refused to make a ruling on such insistence, or that the ruling was made erroneously. *Shelton v. Martin,* 180 Tenn. 454, 176 S.W.2d 247 (Tenn.1943). A party will not be allowed to put an objection in his pocket to save for a later time. A party must, when the error occurs, object or the perceived error is waived in most instances. This issue is without merit.

■ Plaintiffs' third issue is: "Were the transfer and the trial without a jury to be proper, did the Court rule correctly that the real estate transfer to the defendants was not tainted with champerty?".

Plaintiffs contend that the evidence at trial shows that defendant purchasers knew at the time of their purchase and prior thereto that the plaintiffs were in actual possession of the property in ques-tion and that they were using the same and claimed ownership thereof for some forty years preceding the defendants' purchase. The Chancellor found "[t]he proof introduced clearly evidences that Roma Burnette was in actual possession of the land conveyed at the time of the conveyance. Therefore there did not occur any violation of the champerty statutes."

Tennessee Code Annotated, Section 66–4–202, provides:

Any such agreement, bargain, sale, promise, covenant, or grant shall be utterly void, where the seller has not himself, or by his agent or tenant, or his ancestor, been in actual possession of the lands or tenements, or the reversion or remainder, or taken the rents or profits for one (1) whole year next before the sale.

■ The Chancellor found, and we agree, that the plaintiffs were not adversely holding the disputed property. A conveyance by a person even without title or possession is not champertous unless the land is being adversely held by another. *Ferguson v. Prince,* 136 Tenn. 543, 190 S.W. 548 (1916).

■ The champerty statutes prohibit the sale of a pretended interest in real property. *Collier v. Slayden Bros.,* 712 S.W.2d 106 (Tenn.App.1985). In this instance, the grantor Roma Burnette had more than a pretended interest. She was the actual owner and possessor of the land sold. This issue is without merit.

■ Plaintiffs' fourth, and last, issue is: "Assuming the propriety of the transfer, the trial without a jury, and the appropriate application of the champerty law, did the Court properly rule that the plaintiffs had no adverse possession rights to any of the real estate in question?".

The Chancellor found, and we agree, that "plaintiffs [have] by virtue of their own testimony failed to establish any claim of ownership to this land by title or by adverse possession."

The Chancellor further found, and the record supports the findings, that:

(1) All of the land which is involved in this case was originally owned by Martha Burnette and Tom Burnette.

(2) Martha Burnette and Tom Burnette were the parents of Howard Burnette and Paul Burnette.

(3) Martha Burnette and Tom Burnette conveyed to Paul Burnette and Pauline Burnette a specific tract of land described in a deed recorded March 9, 1946 in Deed Book H, Series 6, Page 494 in the Register of Deeds of Roane County.

(4) The description of this lot is different from a survey prepared by Ed Hart which is dated February 19, 1946 and which was believed by the plaintiffs to be a survey of their property.

(5) By deed dated March 5, 1946 the remaining land owned by Martha Burnette and Tom Burnette was conveyed to Howard Burnette and Roma Burnette, reserving to the grantors a life estate. This deed specifically references the prior conveyance to Paul Burnette and Pauline Burnette.

(6) The disputed land is a portion of the conveyance to Howard Burnette and Roma Burnette.

(7) Martha Burnette, Tom Burnette and Howard Burnette are deceased.

(8) Roma Burnette has lived on the property and was in actual possession of the property until she conveyed her property to Downtown Properties, a partnership composed of the defendants.

(9) The plaintiff Paul Burnette has known for over 25 years that the property conveyed to him by his deed was not the property described in the Hart survey.

(10) The land has never been fenced nor have Paul Burnette or Pauline Burnette prohibited anyone from coming upon the land.

(11) The plaintiffs have planted flowers upon the land, have planted fruit trees, have had gardens on the land, and have regularly mowed the area. A security light has been erected and maintained on the property.

(12) Howard Burnette walked the land and according to Paul Burnette sometimes mowed the area during his life.

(13) Roma Burnette had legal title to the disputed area.

(14) Paul Burnette told the Surveyor Gibson that he had been told that his brother and Hart resurveyed the lot one Sunday when he was away from the property attending church.

(15) Paul Burnette stated to James Pickel that if he had known that Roma Burnette was going to sell, that he would have tried to buy the disputed area and asked that a price be quoted.

(16) That Roma Burnette told the real estate agent that the plaintiffs used the land for a garden with her permission.

The record fully supports the Chancellor's findings. This issue is without merit.

It results that the judgment of the Chancellor is affirmed in all respects and the cause remanded to the Chancery Court for the collection of costs which are assessed to the plaintiffs, and for further necessary proceedings.

SANDERS, P.J., (E.S.), and GODDARD, J., concur.

## ORDER ON PETITION TO REHEAR

Plaintiffs/appellants have filed a petition to rehear which the Court has considered and finds to be without merit.

It is therefore ORDERED that the petition be and the same is overruled with cost assessed to the plaintiffs/appellants.