# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**Oct. 20, 1995**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| WILLIAM M. WOODSIDE, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | Davidson Probate |
| BILLY E. and MARY AGNITA WOODSIDE, | ) | No. 89D-95 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Appeal No. |
| VS. | ) | 01-A-01-9503-PB-00121 |
| | ) | |
| | ) | |
| SUSAN E. WOODSIDE (GILLEY), | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

# C O N C U R R I N G   O P I N I O N

In 1987 the United States Supreme Court placed limits on the use of private lawyers to prosecute criminal contempt cases in federal court. *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 107 S. Ct. 2124 (1987). This appeal calls upon us to decide whether similar limitations should be placed on the use of private lawyers to prosecute criminal contempt cases in state court. The majority has declined to adopt the reasoning of the *Young* decision based on an unduly narrow view of this court's responsibility. I cannot join the majority's opinion. Instead, I would find that the resolution of this important question must await another day because the appellant has waived his right to raise the issue by failing to make a timely demand for another prosecutor in the trial court.

# I.

Susan Gilley and William Woodside were divorced in May 1989. The trial court awarded custody of their two children to Mr. Woodside's parents and ordered both Ms. Gilley and Mr. Woodside to pay $50 per week in child support. In May 1990, the trial court transferred custody of the two children to Ms. Gilley and directed Mr. Woodside to pay her $118 in weekly child support.

In March 1994 Ms. Gilley filed a petition seeking to increase the amount of Mr. Woodside's child support and to hold him in contempt for failing to pay child support. She alleged that Mr. Woodside was $10,054 in arrears in his child support payments and requested that he be incarcerated for six months pursuant to Tenn. Code Ann. § 36-5-104(a) (1991).[1] Mr. Woodside responded with his own petition seeking to hold Ms. Gilley in contempt for interfering with his visitation.

The trial court heard the evidence with regard to both contempt petitions in September 1994. Ms. Gilley's lawyer presented the proof against Mr. Woodside without objection. On October 11, 1994, the trial court filed an order finding that Mr. Woodside was able to pay child support and that he was $10,054 in arrears in his child support payments. Accordingly, the trial court found Mr. Woodside in contempt and sentenced him to serve six months in the Metro Workhouse. In addition to requiring Mr. Woodside to pay down the arrearage, the trial court also increased his child support payments to $141 per week.

Mr. Woodside retained a new lawyer who filed a motion for a new trial and for post-conviction relief.[2] In addition to challenging the competency of Mr.

---

[1]Tenn. Code Ann. § 36-5-104(a) provides that "[a]ny person, ordered to provide child support and maintenance for a minor child or children, who fails to comply with the order or decree, may, in the discretion of the court, be punished by imprisonment in the county workhouse or county jail for a period not to exceed six (6) months."

[2]Of course, the motion could not properly be for a new trial or for post-conviction relief. The proper form of a request for post-trial relief following a bench trial would have been a
(continued...)

Woodside's trial lawyer, the motion asserted that the trial court had abused its discretion by permitting Ms. Gilley's lawyer to prosecute the criminal contempt claim "contra to the United States Supreme Court directives contained in *Young v. U.S. . . ..*" The trial court denied the motion, and Mr. Woodside perfected this appeal solely to take issue with the trial court's decision to permit Ms. Gilley's lawyer to prosecute the criminal contempt charges against him.

## II.

I turn first to two analytical flaws in the majority's opinion. The majority has declined to consider whether the *Young* decision should be followed in Tennessee because it is not "binding" on Tennessee courts and because determining whether the *Young* decision should be followed is a "public policy" matter that can only be determined by the Tennessee Supreme Court or the General Assembly. This reasoning reflects an unduly narrow view of our responsibility and is inconsistent with our other decisions.

## A.

Prior to 1987, many federal courts followed Judge Learned Hand's dicta permitting trial courts to use a lawyer representing an interested party to prosecute a criminal contempt charge arising out of the civil proceeding. *McCann v. New York Stock Exchange*, 80 F.2d 211, 214 (2d Cir. 1935), *cert. denied*, 299 U.S. 603, 57 S. Ct. 233 (1936). The United States Supreme Court parted company with Judge Hand in *Young v. United States ex rel. Vuitton et Fils, S.A.* when it held that federal judges could no longer appoint a private lawyer representing an interested party to prosecute a criminal contempt action.

---

[2](...continued)
motion to alter or amend the judgement pursuant to Tenn. R. Civ. P. 59.04. Since we construe motions based on their substance, not on their title, *Bemis Co. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979); *Pickard v. Ferrell*, 45 Tenn. App. 460, 471, 325 S.W.2d 288, 292-93 (1959), we have elected to treat Mr. Woodside's motion as a Tenn. R. Civ. P. 59.04 motion.

The *Young* Court did not establish a constitutional right to a public prosecutor in criminal contempt proceedings. *Green v. Green*, 642 A.2d 1275, 1280-81 (D.C. 1994). While the justices unanimously preferred referring criminal contempt proceedings to public prosecutors, Terri R. Braswell, *Comment, Criminal Procedure - Young v. United States ex rel. Vuitton et Fils S.A.: The Right to a Disinterested Prosecutor in a Federal Criminal Contempt Proceeding Arising from the Underlying Civil Litigation*, 18 Mem. St. U.L. Rev. 143, 159 (1987), only four justices found that using private lawyers for interested parties to prosecute criminal contempt cases was inconsistent with the Due Process Clause of the Fourteenth Amendment.

Rather than relying on constitutional grounds, the *Young* majority rested its decision on the American Bar Association's Model Code of Professional Responsibility (1969, revised 1980). The Court pointed out that public prosecutors represent the sovereign and that they have a responsibility to seek justice, not merely to convict.[3] Accordingly, the Court reasoned that lawyers already representing an interested party would have an insurmountable conflict of interest if they also undertook to represent the sovereign in a criminal contempt case.[4] The Court pointed out that

> The Government's interest is in dispassionate assessment of the propriety of criminal charges for affronts to the Judiciary. The private party's interest is in obtaining the benefits of the court's order. While these concerns may sometimes be congruent, sometimes they may not. A prosecutor may be tempted to bring a tenuously supported prosecution if such a course promises financial or legal rewards for the private client. Conversely, a prosecutor may be tempted to abandon a meritorious prosecution if a settlement providing benefits to the private client is conditioned on a recommendation against criminal charges.

---

[3]*Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. at 803, 107 S. Ct. at 2135, *quoting* ABA Model Code of Professional Responsibility EC 7-13.

[4]*Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. at 802-06, 107 S. Ct. at 2135-37, *quoting* ABA Model Code of Professional Responsibility, DR 5-105 and EC 5-14, 5-15, and 9-6.

*Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. at 805, 107 S. Ct. at 2136; *see also United States v. Providence Journal Co.*, 485 U.S. 693, 696 n.3, 108 S. Ct. 1502, 1505 n.3 (1988).

The United States Supreme Court was exercising its "supervisory power" over lower federal courts when it decided the *Young* case. *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. at 790, 107 S. Ct. at 2128. Thus, as the majority correctly points out, the *Young* decision is not "binding on the Courts of Tennessee." However, simply concluding that the decision is not "binding" cannot end the inquiry. The United States Supreme Court relied heavily upon the Model Code of Professional Responsibility. The Tennessee Supreme Court has adopted the very same code, and it currently governs the conduct of all attorneys in this state. *See* Tenn. S. Ct. R. 8.

The Tennessee Supreme Court is the final arbiter of its own rules. Accordingly, Tennessee's courts must look first to the decisions of the Tennessee Supreme Court for controlling interpretations of these rules. The Tennessee Supreme Court has, however, recognized the value of uniform interpretations of similar rules, *State v. Jones*, 598 S.W.2d 209, 219 (Tenn. 1980), and has held repeatedly that we may look to other jurisdictions' interpretations of similar rules for helpful guidance in interpreting our own rules. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 237 (Tenn. 1993); *Byrd v. Hall*, 847 S.W.2d 208, 211 n.2 (Tenn. 1993); *Continental Casualty Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986).

The Tennessee Supreme Court has not addressed the propriety of using private lawyers to prosecute criminal contempt cases under Tenn. S. Ct. R. 8. Thus, when this issue is presented to us in a proper case, we should certainly look not only to the *Young* decision but also to the decisions of other jurisdictions for helpful guidance in determining whether Tenn. S. Ct. R. 8, DR 5-105 and EC 5-14, 5-15, 7-13, and 9-6 prohibit private lawyers from prosecuting criminal contempt cases arising out of a judgment in which their clients have an interest.

**B.**

-5-

The Tennessee Supreme Court derives its power directly from the Constitution of Tennessee. *Clements v. Roberts*, 144 Tenn. 152, 155, 231 S.W. 902, 902 (1921). It is the supreme judicial tribunal of the state, *Barger v. Brock*, 535 S.W.2d 337, 340 (Tenn. 1976), and it has the inherent power to promulgate any rule governing the practice of law that is reasonably necessary to carry out its constitutional prerogatives. *Petition of Tennessee Bar Assoc.*, 532 S.W.2d 224, 227 (Tenn. 1975); *In re Adoption of Rule of Court*, 479 S.W.2d 225, 227 (Tenn. 1972); *Cantor v. Brading*, 494 S.W.2d 139, 143 (Tenn. Ct. App. 1973); Tenn. Code Ann. § 16-3-503 (1994).

Only the Tennessee Supreme Court has the authority to promulgate rules governing the practice of law and the procedure to be followed in all courts of the state. *State v. Best*, 614 S.W.2d 791, 793 (Tenn. 1981); *Belmont v. Board of Law Examiners*, 511 S.W.2d 461, 464 (Tenn. 1974); Tenn. Code Ann. § 16-3-402 (1994). When the Court promulgates a rule, it has the force and effect of law. *See State v. Hodges*, 815 S.W.2d 151, 155 (Tenn. 1991); *Tennessee Dep't of Human Servs. v. Vaughn*, 595 S.W.2d 62, 63 (Tenn. 1980); *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980).

The Tennessee Supreme Court was exercising its inherent judicial power when it promulgated Tenn. S. Ct. R. 8 in 1981.[5] *Newton v. Cox*, 878 S.W.2d 105, 111 (Tenn.), *cert. denied* ___ U.S. ___, 115 S. Ct. 1989 (1994). The Code of Professional Conduct in Tenn. S. Ct. R. 8 provides the bench and bar with a guide to a lawyer's obligations to his or her client under various circumstances. *Lazy Seven Coal Sales, Inc. v. Hinds*, 813 S.W.2d 400, 405 (Tenn. 1991); *Wood v. Parker*, App. No. 01-A-01-9406-CH-00286, slip op. at 11, 20 T.A.M. 9-10 (Tenn. Ct. App. Feb. 8, 1995), *perm. app. denied* (Tenn. May 30, 1995). The Code's

---

[5]The Tennessee Supreme Court first adopted the American Bar Association's Canons of Professional and Judicial Ethics when it promulgated Tenn. S. Ct. R. 38 in 1967. In re Rules of the Supreme Court of Tennessee, Tennessee Decisions, 418-424 S.W.2d at XLIII (order effective Dec. 4, 1967). The Court replaced the substance of Tenn. S. Ct. R. 38 with the American Bar Association's Code of Professional Responsibility in 1975. In re Rules of the Supreme Court of Tennessee, 530-533 S.W.2d at XXVII (order effective Dec. 5, 1975). Tenn. S. Ct. R. 38 became Tenn. S. Ct. R. 8 when the Court revised its rules in 1981. In re Rules of the Supreme Court of Tennessee, Tennessee Decisions, 609-614 S.W.2d at XXVII (order effective Jan. 28, 1981).

disciplinary rules are mandatory, and the ethical considerations are aspirational and represent the objectives toward which every lawyer should strive. Tenn. S. Ct. R. 8, Preliminary Statement.

Even though the Tennessee Supreme Court has the exclusive prerogative to promulgate rules governing the practice of law, all the courts have the power and duty to apply these rules in appropriate circumstances. The intermediate appellate courts have frequently based their decisions on the Code of Professional Responsibility. Accordingly, this court has relied on portions of Tenn. S. Ct. R. 8 to resolve disputes involving: (1) attorneys' fees, *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn. Ct. App. 1977); (2) attorneys' obligations to their clients, *State v. Brown*, 644 S.W.2d 418, 421 (Tenn. Crim. App. 1982); (3) attorneys' appearing as witnesses, *Winrow v. State*, 649 S.W.2d 18, 20 (Tenn. Crim. App. 1983); (4) attorneys' political endorsements, *Taylor v. Nashville Banner Publishing Co.*, 573 S.W.2d 476, 489 (Tenn. Ct. App. 1978) (Todd, J., concurring), *cert. denied*, 441 U.S. 923, 99 S. Ct. 2032 (1979); (5) an attorney's obligation to produce evidence, *In re Estate of Perlberg*, 694 S.W.2d 304, 306 (Tenn. Ct. App. 1984); and (6) the propriety of closing jury arguments, *Scarbrough v. City of Lewisburg*, 504 S.W.2d 377, 383-84 (Tenn. Ct. App. 1973).

The majority's professed reluctance to decide whether the rationale of the *Young* case applies to practice in Tennessee's courts is inconsistent with the posture that this court has taken in other cases. When a proper case presents itself, I would not hesitate to use the Code of Professional Responsibility to decide whether trial courts may use private lawyers to prosecute criminal contempt cases arising out of orders or judgments in which the attorneys' clients have an interest.

**III.**

Lawyers must call prejudicial errors to the trial court's attention in a timely manner in order to be able to raise these errors on appeal. Unless an error affects the trial court's subject matter jurisdiction, the failure to raise an error in a timely manner amounts to a waiver because appellate courts will not permit parties to

silently preserve an error as an "ace in the hole" to be used in the event of an adverse decision. *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988); *Spain v. Connolly*, 606 S.W.2d 540, 543-44 (Tenn. Ct. App. 1980).

Some errors must be called to the trial court's attention before trial. Thus, objections to the competency of the trial judge are deemed waived if not raised before trial. *Dupuis v. Hand*, 814 S.W.2d 340, 342 (Tenn. 1991); *Grozier v. Goodwin*, 69 Tenn. 125, 128 (1878). Likewise, objections to the failure to provide a jury when one has been requested are deemed waived if not asserted before the trial begins. *Burnette v. Pickel*, 858 S.W.2d 319, 322 (Tenn. Ct. App. 1993).

Similarly, lawyers have a duty to call errors committed during the course of a trial to the trial court's attention for timely correction. Thus, lawyers must make timely objections to (1) the admissibility of evidence, *Thompson v. Thompson*, 749 S.W.2d 468, 470 (Tenn. Ct. App. 1988), (2) improper conduct of the trial judge, *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 79 (Tenn. Ct. App. 1990), or (3) improper comments of opposing counsel. *Marress v. Carolina Direct Furniture, Inc.*, 785 S.W.2d 121, 126 (Tenn. Ct. App. 1989); *Havron v. Page*, 25 Tenn. App. 367, 370, 157 S.W.2d 856, 858 (1942).

It should have been obvious before the September 1994 trial began that the trial court had not referred the criminal contempt case against Mr. Woodside to the district attorney general or to another disinterested lawyer. Thus, from the very outset of the trial, Mr. Woodside and his lawyer knew that Ms. Gilley's lawyer would be prosecuting the criminal contempt charges against him. Mr. Woodside did not question the prosecutorial role of Ms. Gilley's lawyer until the trial was finished and the judgment rendered. The objection in Mr. Woodside's motion for new trial came too late. Permitting Mr. Woodside to assert this issue now, in effect, permits him to play his "ace in the hole" and at the same time provides a similar trump card to other similarly situated litigants.

I would find that Mr. Woodside has waived his right to take issue with the use of Ms. Gilley's lawyer to prosecute the criminal contempt case against him

because he did to raise the issue in a timely manner. Accordingly, I would affirm the trial court's decision but leave the question of the propriety of using lawyers for interested parties to prosecute criminal contempt cases for another day.

_____
WILLIAM C. KOCH, JR., JUDGE