STATE of Tennessee, Appellee,

v.

Marvin Douglas BROWN, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 28, 1982.

Permission to Appeal Denied by Supreme Court Jan. 17, 1983.

Joe P. Binkley, Sr., Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Nashville, for appellee.

OPINION

SCOTT, Judge.

The appellant and his co-defendant, John A Brown, Jr., were convicted of two counts of murder in the first degree and each received sentences of ninety-nine years in the state penitentiary on each count. The trial judge ordered the sentences to run consecutively. Aggrieved by the actions of the judge and jury, the appellant has presented two issues on appeal. He does not challenge the sufficiency of the convicting evidence. Therefore, no recitation of the facts is necessary. However, a history of the litigation is necessary to place the issues in context.

The appellant and his co-defendant were convicted on November 2, 1974, following a highly publicized investigation and trial. The reason for the publicity was that one of the victims was a world famous country music artist, David "Stringbean" Akeman. The other victim was his wife, Estelle.

Throughout the litigation, the appellant has been represented by the same counsel, Joe P. Binkley. John Brown was represented by Arnold Peebles, Jr. and David Pack. Following their convictions, motions for a new trial were filed by both defendants. John Brown's motion was heard immediately, and he pursued his appeal. However, the appellant waited until all of John Brown's protracted appeals were fully determined before seeking a hearing on his motion for a new trial. Just over seven years after the trial, his motion for a new trial was heard and overruled. He has, of course, been in the penitentiary during this entire period.

In his appeals John Brown raised a number of issues. Chief among these was his contention that he received ineffective assistance of counsel from Mr. Peebles. In the first appeal a panel of this Court found counsel effective and overruled his assignment of error concerning the competency of his counsel. *John A. Brown, Jr. v. State of Tennessee,* Tennessee Criminal Appeals, opinion filed at Nashville, February 1, 1978. In so holding this Court noted that it was John Brown's counsel's strategy to place responsibility for the homicides on the appellant, and that appellant's counsel adopted the same strategy. The Court noted that to say that John Brown's trial counsel was incompetent would require a finding discrediting the trial judge, the co-counsel, Mr. Pack, and also this appellant's able counsel.

Subsequently, our Supreme Court granted John Brown's petition for certiorari and remanded the cause to the trial court for a rehearing upon the issues of the mental and physical condition of Mr. Peebles during and at the time of the trial of his case on the merits. *John A. Brown, Jr. v. State of Tennessee,* Tennessee Supreme Court, per curiam order filed at Nashville, November 6, 1978.

In due course the second hearing was held and the trial judge found that Mr. Peebles met the standards mandated by *Baxter v. Rose,* 523 S.W.2d 930 (Tenn.1975). The matter was again appealed to this Court and affirmed. *State of Tennessee v. John A. Brown, Jr.,* Tennessee Criminal Appeals, opinion filed at Nashville, May 1, 1981. Thereafter, the Supreme Court denied permission to appeal. *State of Tennessee v. John A. Brown,* Tennessee Supreme Court, per curiam order filed at Nashville, August 31, 1981.

Thereafter, John Brown filed a petition for habeas corpus in the United States District Court for the Middle District of Tennessee, contending that he received ineffective assistance of counsel at his trial. In a memorandum opinion filed July 28, 1982, Honorable L. Clure Morton, the Chief Judge of that Court, dismissed the petition, specifically finding that John Brown received effective assistance of counsel at his trial.

In this appeal the appellant first contends that the trial judge had no jurisdiction to consider this matter after the expiration of sixty days from the date he vacated his office.

On October 2, 1978, Judge Allen R. Cornelius, Jr., the trial judge who presided at the trial of this case, was appointed by the

Governor as a member of this Court. In order to be seated as a member of this Court, he resigned his position as Judge of the Criminal Court of Davidson County.

A trial judge has sixty days from the date of vacation of his office for any cause, except death or permanent insanity, in which to conclude cases pending before him. He can exercise all the powers in connection with the case that he could have exercised had the vacation not occurred. TCA § 17-1-304(a). Among the specifically enumerated powers is the power to hear and determine motions for a new trial. TCA § 17-1-304(c).

In *White v. State,* 542 S.W.2d 628, 629 (Tenn.Cr.App.1976), this Court held that a retired trial judge who presided over the defendant's trial could not act on the motion for a new trial or sign the bill of exceptions more than sixty days after he vacated his office, since nothing appeared in the record to give him the authority to do so.

In *Williams v. Daniel,* 545 S.W.2d 120, 122-123 (Tenn.App.1976), the power of the trial judge to conclude a case which the judge had under advisement at the time of his retirement was questioned. In that case the chancellor's term expired on August 31, 1974, and the sixty day period expired on October 30, 1974. On October 17, 1974, the Chief Justice designated the same trial judge to conclude this matter and others. The Court of Appeals concluded that TCA § 17-1-304 (then designated TCA § 17-116) is directory only and not mandatory.

The appellant contends in this case that the Chief Justice had no jurisdiction to designate the trial judge to hear this case because his designation, unlike the designation in *Williams v. Daniel, Id.,* was not made until December 7, 1978, beyond the sixty day period. Hence, he reasons that the trial judge had absolutely no jurisdiction to hear the motion for a new trial.

TCA § 17-2-109(a) provides that:

Whenever litigation in any chancery, circuit or criminal court of this state shall become congested or delay in the disposition of litigation becomes imminent for any reason, the chief justice of the Supreme Court shall assign a retired or regular chancellor or judge to assist in the removal of such congestion or delay; . . . .

■ Even though Judge Cornelius was, at the time the motion was finally heard, an appellate judge, he was a "regular judge", and, therefore, was within the category of judges subject to designation by the Chief Justice.

■ In addition, the Supreme Court has supervisory powers over all inferior courts of this state. TCA § 16-3-501. Among the enumerated powers is the power to "designate and assign temporarily any judge or chancellor to hold . . . any court of comparable dignity or equal or higher level, for any good and sufficient reason". TCA § 16-3-502(1). Although the Court of Criminal Appeals is of a higher level than the Criminal Court of Davidson County, the general power to "take all such other, further and additional action as may be necessary to the orderly administration of justice within the state, whether or not herein or elsewhere enumerated" is also granted by statute to the Supreme Court. TCA § 16-3-502(6). The powers of the Supreme Court are full, plenary and discretionary. TCA § 16-3-504. The Court has all the inherent powers of a court of last resort. TCA § 16-3-503.

As the state points out in its brief, to suggest that after the expiration of the sixty day time period that the Chief Justice could not designate a judge to hear the motion would be a finding that the motion could not be heard at all. As the state further points out, this would be an absurd result and certainly would be detrimental to the appellant, since without action on the motion he could neither get a new trial nor pursue his appeal. Rule 33(a), T.R.Cr.P., Rule 3(e), T.R.A.P.

■ Judge Cornelius was the logical candidate for this designation, since he presided at the trial and was therefore familiar with both the law and the facts applicable to this case. The Chief Justice had the

power to designate and properly designated Judge Cornelius. Thus, the trial judge had jurisdiction to act on the motion, and this issue has no merit.

In the second issue, the appellant contends that his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution was violated and undermined by the bizarre and abnormal behavior of *his co-defendant's counsel.* He contends that his rights were repeatedly violated due to Mr. Peebles' inappropriate conduct and behavior at trial. He contends that this was caused by the attorney's drug abuse during the trial.

Counsel for the appellant has cited no case in which it has even been considered, much less held, that a defendant is entitled to challenge the competency of his co-defendant's counsel. This is a novel argument and perhaps one of first impression in these United States. The state, likewise, has cited no cases wherein this exact issue was considered, and our research has revealed only one somewhat analogous case.

In *Leeper v. State,* 4 Tenn.Cr.App. 404, 472 S.W.2d 240, 242 (1971), a co-defendant's counsel became quite ill on the last day of trial, but he continued to represent his client. The co-defendant contended that he was prejudiced by the illness of his co-defendant's counsel. This Court could perceive no prejudice to either defendant.

■ A co-defendant's counsel has no obligation to protect the interests of the co-defendant. His duty and obligation is to his client alone. It is the client who has retained him or for whom he has been appointed to whom his duty of loyalty lies, free of compromising influences and loyalties. EC 5–1, Canon 5, *Code of Professional Responsibility,* Rule 8, Tennessee Supreme Court Rules. His obligation is to represent the interests and only the interests of his client. In a joint trial each defendant represented by separate counsel is thus protected.

Indeed, the adversary system provides the opportunity for counsel to seek, as each

defendant's counsel did in this case, to cast the co-defendant in the role of the guilty party, with each attorney seeking to exonerate his client. However, such actions do not amount to conduct prejudicial to any constitutional right of the co-defendant against whom these efforts are directed.

In this case Mr. Peebles has been found to be competent by the trial judge in two separate hearings. His findings have been affirmed by this Court, and permission to appeal has been denied by this state's highest tribunal. In addition, a Federal District Court has considered the issue in a habeas corpus proceeding and found that John Brown was competently represented.

■ Since the co-defendant's counsel competently represented the interests of his own client, it logically follows that his actions did not violate any state or federal constitutional rights of the appellant/co-defendant.

It is not intended to imply that a co-defendant's counsel's conduct could *never* be so egregious as to violate the constitutional rights of a co-defendant. In such a case the trial judge would obviously be in error by failing on proper motion to declare a mistrial, punish the miscreant for contempt, or otherwise remedy the damaging situation *sua sponte.* A reversal would be required because of the trial judge's failure, not because of any breach of duty to the co-defendant by the offending attorney.

This appellant was not prejudiced in any way by the actions of his co-defendant's counsel. This issue has no merit.

Finding both issues devoid of merit, the judgment is affirmed.

O'BRIEN and TATUM, J., concur.