IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 2, 2019 Session

**STANLEY WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 10-00629        James M. Lammey, Judge

_____

**No. W2018-01269-CCA-R3-PC**

_____

The Petitioner, Stanley Williams, was denied post-conviction relief for his convictions for first degree premeditated murder, attempted first degree premeditated murder, and employing a firearm in the commission of a dangerous felony and his aggregate sentence of life in prison plus thirty years. On appeal, the Petitioner alleges that trial counsel was ineffective for failing to request a severance of his trial from his co-defendant's trial, failing to communicate and investigate, failing to challenge the chain of custody of certain evidence, and failing to cross-examine witnesses. He also requests relief pursuant to the writ of error coram nobis based on recanted testimony. After a thorough review of the record, we discern no error and affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Josie S. Holland, Memphis, Tennessee, for the Appellant, Stanley Williams.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Petitioner's convictions stem from a shooting at a Memphis nightclub in which the victim, Mr. Jimmie Johnson,[1] was killed, and the victim's cousin, Mr. Eldridge Donelson, was wounded. The Petitioner was convicted based on the identification of witnesses including Ms. April Campbell. At the post-conviction proceedings, Ms. April Campbell stated she had been mistaken in her identification, and the Petitioner introduced evidence that trial counsel had failed to discover the existence of a family feud between the Petitioner's family and Ms. April Campbell's family. He also sought relief based on trial counsel's failure to seek the severance of his trial from the trial of the co-defendant, Mr. Lashun Gray; failure to communicate; failure to inspect or object to the admission of the victim's bloody shirts; and inadequate cross-examination. Because the Petitioner has failed to establish deficiency or prejudice regarding the post-conviction claims and because the post-conviction court discredited the recantation of Ms. April Campbell's testimony, we affirm the denial of relief.

### Trial Proceedings

Prior to trial, the co-defendant's attorney moved for a severance on the basis that only two eyewitnesses had identified the co-defendant while several had identified the Petitioner and that the co-defendant would be prejudiced by the "overwhelming" proof against the Petitioner. The trial court denied the motion to sever.

The testimony at trial established that there were two parties being held simultaneously at the nightclub on October 18, 2009, and that an argument and a physical fight had broken out prior to the victim's arrival. When the victim arrived at the club, he and Mr. William "Booka" Goliday got into an argument after Mr. Goliday knocked the victim's drink out of his hand, and the argument grew into a physical fight involving numerous people. After the fight, the victim and Mr. Donelson were shot. Ms. April Campbell and her sister, Ms. Janice Campbell, were standing next to the victim when he was fatally shot, and they, along with other witnesses, implicated the Petitioner and the co-defendant in the shootings.

Ms. April Campbell testified that when she arrived at the club, she observed guns in the trunk of a car parked outside. She saw the Petitioner involved in a physical altercation with the victim over the spilled drink. After the fight, Ms. April Campbell,

---

[1] The victim's first name is spelled "Jimmie" in the indictment and "Jimmy" in the trial transcript.

her sister, the victim, and Ms. April Campbell's boyfriend, Mr. Frederic Rivers, were attempting to leave out of the only egress when the Petitioner came in, shooting at them. Ms. April Campbell testified that she saw the Petitioner shoot the victim in the stomach and that she then fled to the kitchen area. Hearing more gunfire, she came out of the kitchen to try to retrieve her sister, and she saw the co-defendant leaving the club with a gun, although she did not see him fire his weapon. She identified the co-defendant from a photographic array and noted on the array that she saw him fighting the victim, that she saw him with a gun, and that her sister and Mr. Rivers saw him shoot the victim. Ms. April Campbell did not recall telling the co-defendant's investigator that she did not remember if the co-defendant had a gun. She also identified the Petitioner from a photographic array as the individual who shot the victim. She testified that she was acquainted with the Petitioner but did not recognize him at the club because he had gained weight since their prior acquaintance.

Ms. Janice Campbell was next to the victim as the shooting occurred, and she saw both the Petitioner and the co-defendant shoot him. She testified that the victim was fighting against both the Petitioner and the co-defendant during the physical altercation. After the fight was over, she tried to leave with her sister, Mr. Rivers, and the victim, but the Petitioner came in shooting at them. They retreated into the club, and the victim attempted to kick down a nonfunctional door. The Petitioner, who appeared angry and appeared to be aiming at the victim, shot the victim in the stomach. After the Petitioner shot the victim, the victim continued to stand. The co-defendant then raced through the club, shooting "like crazy." Ms. Janice Campbell believed that the co-defendant was the one who killed the victim because the victim did not fall until after the co-defendant began firing shots. Ms. Janice Campbell testified that she took off the victim's shirts because he felt hot and that she was wearing the victim's clothing after the shooting. She gave the victim's shirt, which had two bullet holes, to someone at the hospital.

Ms. Cecilia Williams witnessed the Petitioner holding a gun at the club. She was in the bathroom when the fight broke out, and she went outside to avoid the altercation. As she left, she saw a group of men retrieving guns from a car near the front door. While the Petitioner was not among the men by the car, he was standing by the gate, and Ms. Williams saw him enter the club with a gun prior to hearing gunshots. Ms. Williams testified that there were approximately ten armed men. She hid next to a car and spoke to police when they arrived, naming the Petitioner as one of the armed men. She subsequently identified him in a photographic array. She acknowledged she did not tell the police the co-defendant's name on the night of the shooting and that she could not identify him in a photographic lineup.

Ms. Jamaica Cartwright ran out of the club after the fight, and she likewise saw a group of four or five men retrieving guns from the trunk of an older, white car. She

- 3 -

testified that she returned to the club to warn the occupants and then hid under a table. Ms. Cartwright had seen the co-defendant fighting but did not see who was shooting and did not see either the Petitioner or the co-defendant with a gun. She identified the co-defendant from a photographic lineup as one of the men involved in the fight. She acknowledged that when she first spoke to police, she had told them that she left the club instead of going back in to warn others about the men with guns.

Mr. Donelson was not able to identify the person who shot him or the person who shot the victim. He testified that he joined in the fight when he saw the victim fighting and that he subsequently left the club. As he was getting into a car, he heard gunshots, and a man whose face was obscured shot him in the stomach. He fled into the club and hid under a pool table, and he was taken to the hospital by family. He was unconscious for the next few days.

The medical examiner testified that the victim was shot once in the abdomen. He stated that the wound would not necessarily cause the victim to immediately collapse and that there would not necessarily be a lot of blood at the scene. Five bullet casings fired from at least two weapons were found inside the club, and two bullets were recovered. A casing was also found on the sidewalk outside the club.

Officer Will Bryson testified that he responded to the scene and secured it until medical help arrived. He gathered witnesses but did not personally interview them. In giving his background, Officer Bryson mentioned that he played football in college. On cross-examination, trial counsel did not ask any substantive questions of Officer Bryson, but instead asked him about his football experience.

The State rested its case but moved to reopen the case prior to any proof being introduced by the defense. The State noted that it did not initially intend to introduce the victim's shirt into evidence but that the number of holes in the shirt "became an issue" after Ms. Janice Campbell's testimony that there were two bullet holes. The State had attempted to obtain the evidence from the property room after the issue was raised, but the property room was not able to locate the evidence until several hours later. Counsel for the co-defendant objected that the evidence had not been produced in discovery and that he would have tested the evidence had he known it would be used at trial. The prosecution noted that the items were referred to in the discovery materials and were available for inspection in the property room and that no one had requested to inspect them. The Petitioner's trial counsel objected on the basis that the chain of custody had not been established, given that the items had apparently been misplaced in the property room. The trial court agreed that the State must establish a chain of custody prior to introducing the evidence, and Mr. Richard Desaussure, the Chief Administrative Officer for the Criminal Court Clerk's Office, testified that a box containing the shirts was

inadvertently placed on the wrong shelf in the room but that the evidence had never left the property room and had remained sealed. No one had attempted to inspect the evidence since it was initially checked into the property room.

Sergeant Anthony Mullins then testified that Ms. Janice Campbell had given him two shirts which the victim was wearing when he was shot and which Ms. Janice Campbell had subsequently worn for some period of time. One was a black T-shirt and the other a black long-sleeved shirt. The T-shirt had three holes, one oblong and two "very small defects." The long-sleeved shirt had two holes in it. He stated that it was possible that the smaller holes were made by a very small bullet or a fragment, but he could not identify the origin of the holes.

The Petitioner and the co-defendant each presented a witness to vouch for their whereabouts during the shooting. Mr. Derias Pettis testified that he and the co-defendant fled the club during the shooting and that the co-defendant did not have a weapon.

Mr. Karlos Miller testified that his father was the owner of the club and that when he attempted to disperse the fight, it was already ending. The shooting began approximately ten minutes after the fight. Mr. Miller testified that he and the Petitioner were looking for the Petitioner's missing keys when the shooting started and that they were hiding under a table during the shooting. He testified that they did not find the Petitioner's keys but stated that the Petitioner left after the shooting. He then stated that the Petitioner probably found his keys because he was able to leave and finally said that he did not know if the Petitioner left. He did not know that the Petitioner had been charged in connection with the shootings.

The jury convicted the Petitioner of first degree premeditated murder, attempted first degree premeditated murder, and employing a firearm in the commission of a dangerous felony. The Petitioner was sentenced to consecutive sentences of life in prison, twenty-four years, and ten years for an aggregate sentence of life plus thirty-four years. The jury acquitted the co-defendant of first degree premeditated murder but convicted him of the remaining counts, and he received a thirty-four-year sentence.

The Petitioner's appeal was consolidated with the co-defendant's appeal, and the sentences for employing a firearm in the commission of a dangerous felony were reduced to six years, making the Petitioner's effective sentence life plus thirty years. *State v. Lashun Gray and Stanley Williams*, No. W2012-00415-CCA-R3-CD, 2013 WL 3291888, at *13 (Tenn. Crim. App. June 26, 2013), *no perm. app. filed*.[2] The Petitioner's direct appeal challenged the sufficiency of the evidence for attempted first degree murder and

---

[2] As the parties note, the co-defendant's application for permission to appeal was denied.

employing a firearm in the commission of a dangerous felony and challenged the jury instruction related to criminal responsibility for the attempted first degree murder conviction, but this court concluded that there was no error and affirmed the judgments. *Id.* at \*14-15.

## Post-Conviction

The Petitioner filed a timely post-conviction petition. As relevant to the issues on appeal, the Petitioner asserted that trial counsel was deficient in failing to move to sever the Petitioner's trial from the co-defendant's. The Petitioner also alleged that trial counsel was deficient in failing to communicate, in failing to properly investigate or prepare for trial, in failing to object to the introduction of the victim's shirts, and in cross-examining Officer Bryson. The Petitioner then amended the petition to include a claim that he was entitled to a writ of error coram nobis based on newly discovered evidence in the form of testimony by Ms. April Campbell and Mr. Rivers. The co-defendant also filed a post-conviction petition, and the post-conviction court held a joint hearing. *See Lashun Gray v. State*, No. W2018-01262-CCA-R3-PC, 2019 WL 2068506 (Tenn. Crim. App. May 8, 2019) (denying post-conviction relief).

Mr. Rivers testified that he and Ms. April Campbell had been in a relationship for approximately twenty years and that he had gone to school with the Petitioner's older brother. Around 2001, Mr. Rivers witnessed a knife fight between the Petitioner's mother and Ms. Tamika Malone,[3] who was a cousin of the Campbell sisters. The Petitioner's mother was killed in the fight, and Ms. Malone was subsequently incarcerated.

Mr. Rivers was present during the shooting in the club and recounted the fight over the spilled drink. He testified that he was trying to return to Ms. April Campbell, who was pregnant at the time, when people entered the club with guns, shooting. He fled toward the kitchen. Mr. Rivers did not see the shooting, but after the victim was shot, the victim asked Mr. Rivers to retrieve a gun from his vehicle. As Mr. Rivers was exiting the club, he bumped into the Petitioner, who was entering the club from outside. Mr. Rivers did not see the Petitioner with a gun. He stated that he subsequently left town to take care of his mother. He would have testified at trial "if [he] had been here," but he was in Atlanta. Before Mr. Rivers left town, he attempted to convince the Campbell sisters that they were mistaken in their identification of the perpetrators, but they remained unpersuaded by his assertions that, as women, they were too frightened to know what they saw.

---

[3] Ms. Malone's first name is spelled "Tamika" in a report prepared by the co-defendant's investigator in 2010 and "Tomeka" in the transcript, with a note that the spelling is phonetic.

On cross-examination, Mr. Rivers stated that Ms. April Campbell's statement to police that he had seen the co-defendant shoot the victim was false. He denied telling her that the reason he did not run during the shooting was because the gunmen knew him and would not shoot him. He did not know that the Petitioner and co-defendant had been convicted until the post-conviction proceedings despite the fact that he and Ms. April Campbell had lived together for most of the time since the shooting. He agreed that he did not see the actual shooting. He alternately explained Ms. April Campbell's trial testimony by stating that she was emotional and mistaken, that she probably was lying, and that she thought it was the Petitioner "or probably some guy that looked like him."

Trial counsel testified that he had practiced criminal law since 1984 and had previously represented defendants accused of murder. He represented the Petitioner at trial and, with the help of an associate, on appeal. The Petitioner was incarcerated, and post-conviction counsel introduced records showing that trial counsel visited him in jail three times. However, trial counsel testified that he spoke with the Petitioner's family almost daily and also spoke frequently with the Petitioner. Trial counsel did not hire an investigator because he felt his office was capable of investigating the crime. He interviewed witnesses and asked the Petitioner to provide information about any witnesses who might help his case.

Trial counsel agreed that he did not file a motion to sever. He stated that he did not think the Petitioner's and co-defendant's defenses were antagonistic and did not feel that severance was warranted. He elaborated that he considered not only whether there was a basis for severance but also "what will and what won't fly out here." He and the co-defendant's attorney did not coordinate defenses, but the defenses were not in opposition to each other. The co-defendant's attorney was deceased at the time of the post-conviction hearing.

Trial counsel recalled that Mr. Rivers was mentioned in discovery, but he did not attempt to contact Mr. Rivers. Trial counsel had been present for Mr. Rivers's post-conviction testimony and stated that the testimony was contradictory to Mr. Miller's testimony at trial that the Petitioner was inside the club searching for his keys during the shooting. He agreed that Mr. Rivers's testimony would also have been of limited utility because he stated he did not see the shooting.

At the time of trial, trial counsel was not aware of a relationship between the Campbell family and the Petitioner's mother. He testified that he did not think knowledge of the relationship would have been helpful because the evidence suggested that the shooting took place in a moment of anger after a fight.

Trial counsel did not recall the cross-examination of Officer Bryson, but he testified that Officer Bryson played a very limited role in the investigation and did not have important substantive testimony. He stated that he was attempting to establish a relationship with the jury and to humanize himself and his client by asking Officer Bryson about football.

Trial counsel did not recall that Ms. Janice Campbell testified she was wearing the victim's shirt, but he recalled the discovery of the box of evidence in which the shirts had been stored. He testified that he believed he did not raise the issue of the lost box on appeal because it did not seem significant.

Officer Bryson testified at post-conviction that he recalled answering trial counsel's questions about football and that he felt the questions were strange because no one else had ever asked him about his football experience during a criminal trial. He confirmed that his role was limited to securing the scene until detectives arrived. He did not recall seeing a woman in a bloody shirt and testified he would have tried to get her medical attention if he had seen her.

Ms. April Campbell testified that she was mistaken in her identification of the Petitioner when she testified at trial. Although she had believed at the time that the Petitioner was the shooter, she realized her mistake when she saw a man who "looked exactly like him" at a club in 2016 or 2017. She did not call the police or attempt to identify the man whom she now believes to be the real shooter. She did not inform the friends who were with her that she had just discovered she had misidentified the shooter. She confirmed Mr. Rivers's testimony that he had assured her she was mistaken in her identification of the Petitioner at the time of the shooting, but she did not believe Mr. Rivers until she saw the real perpetrator. She testified that she had never seen the co-defendant with a gun, and that this court's opinion was mistaken in its summary of her trial testimony.[4] She asserted that she had never told police that the co-defendant was responsible for the shooting.

The Petitioner testified that trial counsel only met with him two or three times and that they never strategized or spoke about the case. They never spent more than fifteen minutes together. The Petitioner stated that trial counsel did not meet with him about the case when they attended court dates. He testified that money was a point of contention and that trial counsel was always attempting to collect more money from his family. On

---

[4] This court's opinion was not mistaken. At trial, the prosecutor asked, "Did you see [the co-defendant] with anything?" and she responded, "I s[aw] him with a gun, but I didn't []ever see him shoot." This court's opinion stated that she saw the co-defendant carrying a handgun but did not see him shoot. *State v. Lashun Gray and Stanley Williams*, 2013 WL 3291888, at *1-2.

the last day of trial, trial counsel stated that the prosecution had extended a plea offer involving a twenty-five-year sentence but then said that the offer was no longer valid. The Petitioner stated he would not have accepted the plea offer because he was innocent. Trial counsel advised the Petitioner not to testify and never discussed filing a motion to sever.

According to the Petitioner, he and his family had found some witnesses willing to testify to the Petitioner's innocence, but trial counsel said that he was the lawyer and would "take care of it." On the day before trial, trial counsel asked about witnesses, and the Petitioner's family told trial counsel that Mr. Miller was willing to testify. Mr. Goliday would also have offered truthful and helpful testimony, and the Petitioner believed that the State would ask Mr. Goliday to testify.

The Petitioner denied shooting the victim. He confirmed that Mr. Miller had testified at trial that the two of them were searching for keys and hiding during the shooting. He agreed that Mr. Rivers, in contrast, had testified that the Petitioner was entering the building after the victim was shot, but the Petitioner explained that there "probably was a time they went outside." He elaborated that he was outside during the shooting, could not enter his car without the keys, went back inside, and found the keys. Asked if the shooting had not begun when Mr. Rivers saw him outside, he answered, "I guess not."

The Petitioner testified that he was eleven years old when his mother was killed and that he did not know that his mother's killer was related to the Campbells until the post-conviction proceedings.

Ms. Vita Zelikov,[5] a private investigator, testified that she worked with the co-defendant's counsel but never met with trial counsel. She interviewed eight to ten witnesses, including Ms. April Campbell. Ms. April Campbell told Ms. Zelikov that the Petitioner had "a lot of inner hatred and anger" because his mother was murdered by Ms. Campbell's cousin. Both Mr. Rivers and Ms. Janice Campbell refused to speak to Ms. Zelikov, and Ms. April Campbell told Ms. Zelikov that Mr. Rivers probably did not want to be involved. If Ms. Zelikov had been informed that Mr. Rivers thought the Campbells were mistaken in their identification, she would have included it in her memorandum.

The co-defendant testified regarding his counsel's representation and also stated that to his knowledge, the Petitioner did not shoot anyone because he was involved in the

---

[5] Ms. Zelikov's name is spelled "Zelikob" in the transcript, but spelled "Zelikov" in the memorandum Ms. Zelikov prepared for the co-defendant's trial counsel.

physical altercation and it would have been impossible for him to be fighting and shooting at the same time.

The post-conviction court found that having a joint trial provided the Petitioner with certain benefits, including additional peremptory challenges and having two lawyers voir dire the jury and cross-examine witnesses. The post-conviction court further found that Mr. Rivers's testimony was not credible and would not have assisted the Petitioner's case. Regarding the prior relationship between the families, the post-conviction court found it would have been "idiotic" to introduce the proof at trial, as it would have provided the Petitioner a motive for the shooting in the form of a vendetta against the Campbell family. The post-conviction court found that the cross-examination of Officer Bryson was for the purpose of ingratiating trial counsel with the jury and that it had no effect on the case. The post-conviction court discredited Ms. Campbell's testimony about observing the real perpetrator at a club years after the Petitioner was convicted, and it found that there was no reasonable basis to believe the evidence might have affected the verdict. The post-conviction court entered a written order incorporating its oral findings and concluding that the Petitioner had not established deficiency or prejudice and that the allegedly newly discovered evidence would not have resulted in a different judgment had it been presented at trial.

## ANALYSIS

On appeal, the Petitioner contends that he received ineffective assistance of counsel when trial counsel failed to file a motion to sever, failed to communicate with him, failed to investigate the family feud between the Petitioner and the Campbells, failed to inspect the shirts, failed to object to the chain of custody of the shirts, and performed deficiently on cross-examination. He also asserts that the testimony of Ms. April Campbell entitles him to the writ of error coram nobis. The State responds that the Petitioner waived any claim regarding trial counsel's deficiency in failing to uncover the family feud and in failing to discover the box containing the shirts because these issues were not contained in the written petition. The State also asserts that the Petitioner has failed to show deficiency or prejudice for the remaining claims and that the post-conviction court's credibility determinations preclude error coram nobis relief.

### I. Ineffective Assistance of Counsel

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-

conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witness, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the accused the right to the effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Deficiency requires showing that counsel's errors were so serious "'that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 687). To demonstrate deficiency, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). In evaluating deficiency, courts must make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689). "'[A] reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91). The reviewing court must begin with the presumption "that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have been different. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v.*

*Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694). The petitioner must show that the deficiency deprived him of a fair trial and called the reliability of the outcome of the proceeding into question. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

## A. Severance

The Petitioner asserts that trial counsel was deficient in failing to move for a severance because the co-defendant would have testified for and exonerated the Petitioner if they had had separate trials. We conclude that the Petitioner has not established prejudice because he has not demonstrated that the motion would have been granted.

"In order to succeed in proving ineffective assistance of counsel with respect to counsel's failure to file a motion …, [a petitioner] must satisfy both prongs of the *Strickland* test, showing that counsel's failure to file the motion was deficient and that the deficient performance prejudiced the defense." *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006), *abrogated on other grounds by Brown v. Jordan*, 563 S.W.3d 196, 202 (Tenn. 2018). Accordingly, the Petitioner must demonstrate a reasonable probability that, had the motion been filed, the outcome of the proceeding would have been different. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[T]he defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."); *Gary Randall Yarnell v. State*, No. E2004-01762-CCA-R3-PC, 2005 WL 1981471, at *5 (Tenn. Crim. App. Aug. 15, 2005) ("To prevail on either or both of these ineffective-assistance complaints, the petitioner must demonstrate that the motions were meritorious.").

The post-conviction court did not make any findings regarding whether it would have granted the motion to sever, but it did note that the Petitioner received benefits from being tried together with the co-defendant, including additional peremptory challenges and having two lawyers voir dire the jury and cross-examine witnesses. The record also reveals that the trial court denied the co-defendant's motion to sever which was filed prior to trial on the basis that the proof against the Petitioner was stronger than the proof against the co-defendant. Trial counsel testified that he did not see a basis to file a motion to sever and that his sense of "what will and what won't fly out here" led him to believe that the motion would have been unsuccessful.

The Petitioner has failed to present any argument showing that he was entitled to severance. *See State v. Dellinger*, 79 S.W.3d 458, 468 (Tenn. 2002) ("Severance is not required when the evidence admitted at trial would have been admissible against each defendant at separate trials."); *State v. Gosnell*, 62 S.W.3d 740, 749 (Tenn. Crim. App. 2001) ("Even 'mutually antagonistic' defenses do not *per se* require a severance, although they may in some circumstances."). He has presented no evidence that prejudicial proof was admitted at trial due to the joinder with the co-defendant. *State v. Howell*, 34 S.W.3d 484, 491 (Tenn. Crim. App. 2000) ("[T]he state is entitled to have the guilt determined and punishment assessed in a single trial where two or more persons are charged jointly with a single crime, unless to do so would unfairly prejudice the rights of the defendants."). We note that the assertion that the co-defendant would have testified for the Petitioner if the trials had been severed is pure speculation, and the co-defendant's testimony regarding the Petitioner during the post-conviction hearing was limited to the anemic statement that to the co-defendant's knowledge, the Petitioner did not shoot anyone because it would have been impossible for him to shoot while he was fighting. However, numerous witnesses at trial testified that the shooting occurred after the fight.

In order to obtain post-conviction relief, the Petitioner would have had to demonstrate that there was a basis to sever the trials. He has not done so, and he is not entitled to relief. *See Tina Nelson v. State*, No. W2017-00343-CCA-R3-PC, 2018 WL 2261274, at *7 (Tenn. Crim. App. May 17, 2018), *perm. app. denied* (Sept. 17, 2018); *Jesse Wade Glover v. State*, No. W2010-01679-CCA-R3-PC, 2012 WL 12932004, at *4 (Tenn. Crim. App. June 6, 2012) (denying relief for alleged deficiency in failing to ask for severance when the petitioner did "not offer any evidence to support that a severance in this case would have been proper"); *Black v. State*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990) (denying post-conviction relief for failure to file severance when there existed "neither factual nor legal basis for the granting of a severance" and when a co-defendant's motion for a severance had been denied).

### B. Failure to Communicate

The Petitioner contends that trial counsel's preparation for trial was inadequate because he did not meet with the Petitioner or discuss trial strategy. Trial counsel testified that he spoke with the Petitioner and Petitioner's family often. The trial court did not specifically address any failure to communicate but generally found that trial counsel did not make any mistakes. Furthermore, the Petitioner has presented no argument that the outcome of the trial would have been different had trial counsel met with the Petitioner more often. The Petitioner's defense was based on the testimony of Mr. Miller, who claimed that the Petitioner was with him during the shooting under a table, looking for his keys. The jury apparently discredited this witness's testimony. The Petitioner has not shown a reasonable probability that more meetings with trial counsel

- 13 -

would have altered the course of the trial, and he is not entitled to relief on this issue. *See, e.g.*, *Joseph M. Stone v. State*, No. M2003-00731-CCA-R3-PC, 2004 WL 300123, at *3 (Tenn. Crim. App. Feb. 17, 2004).

## C. Failure to Investigate

The Petitioner also asserts that trial counsel was deficient in failing to properly investigate the case. In particular, the Petitioner notes that trial counsel failed to discover that the Campbells' cousin had killed the Petitioner's mother and that trial counsel did not inspect the bloody shirts stored in the evidence vault. The State responds that the Petitioner is statutorily precluded from raising the issues of trial counsel's failure to discover the connection between the Campbells and the Petitioner's mother or failure to discover the shirts because these issues were not included in the written petition. We conclude that the statute does not preclude our consideration of issues which were litigated and ruled on during the post-conviction proceedings but that the Petitioner is not entitled to relief.

## 1. Appellate Review of Issues not Included in the Petition

The State asserts that this court may not address whether counsel's investigation regarding the Petitioner's mother's homicide or the t-shirts was deficient because the issues were not included in the written petition. In arguing that this court may not review issues outside the petition, the State cites to *Long v. State*, 510 S.W.2d 83, 85 (Tenn. Crim. App. 1974), and notes that it is controlling authority under Tennessee Supreme Court Rule 4. *See* Tenn. Sup. Ct. R. 4(G)(2) ("Opinions reported in the official reporter … shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction."). In *Long*, the petitioner's counsel at the post-conviction hearing attempted to orally add additional grounds outside the written petition. 510 S.W.2d at 85. This court observed:

> It is unquestionable that a post-conviction petitioner limits the inquiry to the questions he raises therein. As in other civil actions, he cannot allege one case and prove another; he can rise no higher than the averments set out in his petition; no relief can be sought or given upon grounds not raised therein. A habeas corpus or post-conviction petition must necessarily rest upon and be determined by the factual allegations it contains. Without such rules of orderly procedure[,] a trial degenerates into chaos. This is the clear undergirding principle of the established rule that an evidentiary hearing is not required and no relief can be granted in a post-conviction case when the petition states no ground for relief.

- 14 -

*Id.*

The State is correct that "[a]s a general rule, this court will not address post-conviction issues that were not raised in the petition or addressed in the trial court." *Brown v. State*, 928 S.W.2d 453, 457 (Tenn. Crim. App. 1996) (citing *State v. Smith*, 814 S.W.2d 45, 49 (Tenn. 1991)); *see David Lynn Jordan v. State*, No. W2015-00698-CCA-R3-PD, 2016 WL 6078573, at *65 (Tenn. Crim. App. Oct. 14, 2016); *Richard Price v. State*, No. W2012-02192-CCA-R3-PC, 2014 WL 1512861, at *3 (Tenn. Crim. App. Apr. 16, 2014); *Patrick Thurmond v. State*, No. M2005-00214-CCA-R3-PC, 2006 WL 680924, at *7 (Tenn. Crim. App. Mar. 15, 2006); *Torry Caldwell v. State*, No. 01C01-9703-CC-00115, 1999 WL 97915, at *2 (Tenn. Crim. App. Feb. 18, 1999). This court has likewise refused to review an issue when it was first raised at the post-conviction hearing, the evidence regarding the issue was "not developed in any meaningful way," and the issues was not ruled upon by the post-conviction court. *Oscar Polk, Jr., v. State*, No. W2018-01072-CCA-R3-PC, 2019 WL 911156, at *3 (Tenn. Crim. App. Feb. 15, 2019) (concluding that the issue was waived when it was absent from the petition, not ruled upon by the post-conviction court, and not meaningfully developed). However, *Long* and the cases cited above involved circumstances in which the issue raised on appeal was not litigated in the post-conviction hearing or not resolved by the post-conviction court. In *Long*, the post-conviction court refused to consider or to admit evidence on the issues not raised in the petition. *Long*, 510 S.W.2d at 85; *see Brown*, 928 S.W.2d at 457; *David Lynn Jordan*, 2016 WL 6078573, at *65; *Richard Price*, 2014 WL 1512861, at *3; *Patrick Thurmond*, 2006 WL 680924, at *7; *Torry Caldwell*, 1999 WL 97915, at *2.

In contrast, this court has frequently addressed issues on post-conviction appeal so long as they were presented to and ruled on by the post-conviction court. *See Kenneth Hayes v. State*, No. W2016-01522-CCA-R3-PC, 2017 WL 3106918, at *8 (Tenn. Crim. App. July 17, 2017), *no perm. app. filed* (citing cases); *Timothy Lamont Thompson v. State*, No. M2015-00846-CCA-R3-PC, 2016 WL 496996, at *4 n.1 (Tenn. Crim. App. Feb. 9, 2016); *James Randall Roskam v. State*, No. M2014-00599-CCA-R3-PC, 2015 WL 3398394, at *6-7 (Tenn. Crim. App. May 27, 2015) (addressing an issue not raised until the post-conviction hearing); *Kevin Allen Gentry v. State*, No. E2013-00791-CCA-R3-PC, 2014 WL 1883701, at *11 (Tenn. Crim. App. May 12, 2014); *Shawn Simmons v. State*, No. M2012-00987-CCA-R3-PC, 2013 WL 1225857, at *5 n.3 (Tenn. Crim. App. Mar. 27, 2013); *Vincent Sims v. State*, No. W2008-02823-CCA-R3-PD, 2011 WL 334285, at *63 (Tenn. Crim. App. Jan. 28, 2011) (concluding that numerous issues raised for the first time on appeal were waived but addressing an issue which was raised during the post-conviction hearing); *Jorge Ariel Sanjines v. State*, No. 03C01-9706-CR-00229, 1999 WL 41834, at *8 (Tenn. Crim. App. Feb. 2, 1999). In fact, we have specifically addressed whether *Long* prohibited review of issues not contained in the written petition

and have concluded that "if an issue is not specially pled, we do not view *Long* as prohibiting a trial court from ruling on it if it is litigated by the parties in a post-conviction hearing without objection." *State v. Lester D. Herron*, No. 03C01-9109-CR-00284, 1992 WL 43273, at *4 (Tenn. Crim. App. Mar. 10, 1992).

The State points to the statutory language to argue that the requirement is mandatory and not subject to waiver. Under Tennessee Code Annotated section 40-30-104, "[t]he petitioner shall include all claims known to the petitioner for granting post-conviction relief" in the petition and "shall include allegations of fact supporting each claim for relief set forth in the petition." T.C.A. § 40-30-104(d), (e). Furthermore, "[t]he petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." T.C.A. § 40-30-106(d). The Post-Conviction Procedure Act provides for the dismissal without a hearing of petitions which do not conform to this rule. T.C.A. § 40-30-106(d); *see also* Tenn. Sup. Ct. R. 28, § 8(D)(4) (providing that the hearing "shall be limited to issues raised in the petition").

In *Marlon Yarbro v. State*, a panel of this court addressed a similar argument. No. W2017-00125-CCA-R3-PC, 2018 WL 4441364, at *5-7 (Tenn. Crim. App. Sept. 17, 2018). In its analysis, this court examined Tennessee Supreme Court Rule 28, section 8(D)(5), which states:

> If evidence is objected to on the basis that it concerns issues not raised in the petition or answer, the court may allow amendments and shall do so freely when the presentation of the merits of the cause will otherwise be subserved. The court shall liberally allow a continuance in the event an amendment is allowed to enable the objecting party to meet the evidence.

We note that Tennessee Supreme Court Rule 28, section 8(D)(5) specifically contemplates the circumstance under consideration — when evidence of issues outside the written petition is presented at the post-conviction hearing. The Rule directs the post-conviction court to allow amendments to the petition "freely" if a party has raised an objection to the evidence. Tenn. Sup. Ct. R. 28, § 8(D)(5); *see Marlon Yarbro*, 2018 WL 4441364, at *6 (citing Tenn. Sup. Ct. R. 28, § 8(D)(5); *Montez Antuan Adams v. State*, No. W2001-02488-CCA-R3-PC, 2003 WL 103205, at *3 (Tenn. Crim. App. Jan. 9, 2003)). The court in *Marlon Yarbro* ultimately concluded that the State's failure to object to the evidence waived the procedural default argument because it deprived the petitioner of notice of the need to amend his written petition pursuant to section 8(D)(5). *Marlon Yarbro*, 2018 WL 4441364, at *7. Other panels of this court have come to the same conclusion. *See George Washington Matthews v. State*, No. W2018-00966-CCA-R3-PC, 2019 WL 1110101, at *9 (Tenn. Crim. App. Mar. 11, 2019) *perm. app. filed*;

*Kenneth Brown v. State*, No. W2017-01755-CCA-R3-PC, 2019 WL 931735, at *10 (Tenn. Crim. App. Feb. 22, 2019) *perm. app. filed*; *Steven Tyler Nabi v. State*, No. M2017-00041-CCA-R3-PC, 2018 WL 1721869, at *1-2 (Tenn. Crim. App. Apr. 9, 2018), *no perm. app. filed*.

The Petitioner's written petition generally alleged that trial counsel was deficient because he did not "fully investigate police and witness statements" or "request and investigate discovery." The petition never specifically mentioned the failure to discover the existence of a family feud or allege that the failure to inspect the shirts was deficient. The State did not object to the testimony on these issues at the post-conviction hearing on the basis that the issues were inadequately raised in the written petition. We follow *Marlon Yarbro* in concluding that the failure to object constitutes waiver of the procedural default argument because the Petitioner was deprived of the opportunity to include the issues in an amended written petition under Rule 28, section 8(D)(5). 2018 WL 4441364, at *7; *see Kenneth Brown*, 2019 WL 931735, at *10 (reaching the merits when the issue of ineffective assistance was generally raised but the specific grounds were not included in the petition and the State did not object to evidence at the hearing). Having concluded that neither the statutory provisions nor *Long* bar review, we examine whether the issues were raised at the post-conviction hearing and ruled on by the post-conviction court, or whether they were "not developed in any meaningful way," precluding review. *Oscar Polk, Jr.*, 2019 WL 911156, at *3.

### 2. Failure to Investigate Ms. April Campbell

The State contends that, even if *Long* does not preclude review, this court should refuse to address the issue of the investigation of the feud between the Petitioner's family and the Campbells because the post-conviction proceedings do not provide an adequate basis for appellate review. Ms. April Campbell, Mr. Rivers, Ms. Zelikov, and the Petitioner all testified regarding the circumstances of the Petitioner's mother's death and the availability of that evidence at the time of trial. The prosecutor addressed trial counsel's investigation of the Petitioner's mother's homicide extensively in argument, and the post-conviction court made detailed findings that the failure to discover the evidence did not affect the proceedings. We conclude that the post-conviction proceedings provide a more than adequate basis for review.

The Petitioner asserts that trial counsel's investigation was deficient in that he failed to discover that the Campbell sisters' cousin was the woman who had killed the Petitioner's mother in a knife fight. The State argues that trial counsel's failure to discover the relationship between the Campbell sisters and Ms. Malone was not deficient because both the Petitioner and Ms. April Campbell were ignorant of the connection at the time. The State also asserts that there is no prejudice because the evidence would

- 17 -

have proven inculpatory in that it would have provided an additional motive for the shooting. The post-conviction court found that introducing the proof at trial would have been "idiotic" and that if trial counsel had discovered it, he would have been smart enough to take it "to his grave as a secret."

The Petitioner testified that he was unaware of the connection between the Campbells and his mother's killer until the post-conviction proceedings, and trial counsel likewise testified that he was not aware of the connection. However, contrary to the State's assertion, Ms. April Campbell was aware of the connection at the time of trial, and she told Ms. Zelikov in an interview prior to trial that the Petitioner was angry at her family due to the homicide.

Nevertheless, the Petitioner cannot establish prejudice in trial counsel's failure to discover the information. While the Petitioner asserts that the information would have undercut the Campbell sisters' identification of him because it would have given them a reason to presume he was the shooter, the post-conviction court found that the information would also have given the jury a reason to presume that he would be inclined to seek revenge against the family. Furthermore, there was another, disinterested witness who witnessed the Petitioner enter the club with a gun in his hand, and the jury was instructed regarding criminal responsibility both for the murder of the victim and for the shooting of Mr. Donelson, in which no shooter was identified by any witness. The post-conviction court found that there was no reasonable probability that the outcome of trial would have been different had trial counsel discovered the familial relationship, noting that the evidence would have been inculpatory, that it would have provided an additional motive for the crime, and that trial counsel would not have introduced the evidence at trial. We agree that the Petitioner has not demonstrated a reasonable probability that the outcome of the trial would have been different had trial counsel discovered the relationship, and we affirm the denial of relief.

### 3. Failure to Inspect Shirts

The Petitioner also argues that trial counsel failed to inspect the victim's shirts, which he claims contradicted the theory of the defense that there was no physical proof. The written petition only alleged generally that trial counsel failed to "investigate discovery," without any mention of the shirts. The State argues that the post-conviction proceedings do not provide an adequate basis for appellate review of the failure to inspect the box with the shirts. Trial counsel and the Petitioner both testified regarding the misplaced box of evidence, in particular the objections that were raised to it and whether it was included in the issues raised on direct appeal. However, post-conviction counsel did not argue to the post-conviction court that the failure to inspect the box was constitutionally deficient, and the post-conviction court did not specifically address the

issue but merely found that trial counsel generally did not make mistakes and provided adequate representation. We conclude that this issue is waived. *See Joshua L. Carter v. State*, No. M2017-02401-CCA-R3-PC, 2018 WL 3770036, at *17 (Tenn. Crim. App. Aug. 8, 2018), *perm. app. denied* (Tenn. Nov. 14, 2018) (citing *Brown*, 928 S.W.2d at 457; *Smith*, 814 S.W.2d at 49). In any event, there was no dispute at trial that the victim had been shot and had bled onto his shirts. Because the identity of the gunmen was the only disputed issue at trial, the evidentiary value of the shirts was slight and the failure to inspect them prior to trial did not result in any prejudice.

### D. Objection to the Chain of Custody

The Petitioner asserts that trial counsel failed to make proper objections to the chain of custody of the shirts and that by doing so, he waived the issue for appeal.[6] The State correctly notes that trial counsel did object to the chain of custody of the shirts.

The record shows that, after the State asked to reopen its case and informed the court of the circumstances of the discovery of the box, trial counsel specifically raised an objection based on the chain of custody. The trial court ruled that the State would have to put on a witness outside the presence of the jury to establish the chain of custody of the evidence, and the State did so, presenting a witness who testified that the box had remained sealed[7] and undisturbed in the property room but had been placed on an incorrect shelf. Officer Mullins opened the sealed packets and identified the shirts as the ones which Ms. Janice Campbell had given to him and which he had subsequently sealed and placed into the packets. The Petitioner has not demonstrated deficiency. Furthermore, our conclusion above that the shirts were of minimal evidentiary value also precludes a finding of prejudice.

### E. Inadequate Cross-Examination

The Petitioner asserts that trial counsel was deficient during cross-examination in asking Officer Bryson only about his football experience rather than his recollection of Ms. Janice Campbell wearing the victim's shirts. The State argues that trial counsel's cross-examination was a strategic choice aimed to appeal to the jury and that the

---

[6] The Petitioner also appears to contend that the co-defendant's counsel was deficient in arguing that the State engaged in a discovery violation under Tennessee Rule of Criminal Procedure 16 by failing to show the shirts to the defense. The Petitioner was not denied the right to effective assistance of counsel by the performance of the co-defendant's counsel. *See State v. Brown*, 644 S.W.2d 418, 421 (Tenn. Crim. App. 1982) ("A co-defendant's counsel has no obligation to protect the interests of the co-defendant.").

[7] Post-conviction counsel's assertion to the contrary is incorrect, as Mr. Desaussure testified that the item "remained under seal."

- 19 -

Petitioner has not shown prejudice. We conclude that the Petitioner cannot establish deficiency or prejudice.

The Petitioner asserts that the questions about football were deficient because they were unprofessional. The Petitioner cites to the American Bar Association's Criminal Justice Standard 4-7.2, entitled "Civility with Courts, Prosecutors, and Others," which states:

> (a) As an officer of the court, defense counsel should support the authority and dignity of the court by adherence to codes of professionalism and by manifesting a courteous and professional attitude toward the judge, opposing counsel, witnesses, jurors, courtroom staff and others. In court as elsewhere, the defense counsel should not display or act out of any improper or unlawful bias.

There is nothing in the record to show that counsel failed to demonstrate civility or courtesy or was improperly biased. The post-conviction court found that Officer Bryson gave little substantive testimony that could have been the subject of cross-examination and that trial counsel chose to ask about football as a way to ingratiate himself with the jury and was accordingly not deficient. We discern no error in this conclusion.

The Petitioner also objects to the failure to ask Officer Bryson about the bloody shirts. At the post-conviction hearing, Officer Bryson testified that he did not recall a woman wearing a bloody shirt at the crime scene, although Ms. Janice Campbell had testified that she was wearing the victim's shirts. The Petitioner asserts Officer Bryson's testimony would have impeached Ms. Janice Campbell. The items introduced into evidence at trial were described by Officer Mullins as two black shirts, and the evidence also established that the victim did not bleed heavily onto his clothing. There is not a reasonable probability that any testimony by Officer Bryson that he did not notice blood on the black shirts Ms. Janice Campbell was wearing would have had an effect on the outcome of the proceedings. As noted above, the fact that the victim was shot in the stomach and bled onto a shirt was not in dispute at trial.

## II. Error Coram Nobis

The Petitioner asserts that he is entitled to a writ of error coram nobis because Ms. April Campbell's post-conviction testimony established that she was mistaken when she identified him as the shooter. The State responds that the Petitioner is not entitled to relief because the post-conviction court did not credit Ms. April Campbell's post-conviction testimony and because it found that the Petitioner could not establish prejudice

regarding the evidence. We conclude that the post-conviction court did not abuse its discretion in denying relief.

Coram nobis relief is an "extraordinary remedy known more for its denial than its approval." *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). "The evil that the coram nobis statute is aimed at remedying is a conviction based on materially incomplete or inaccurate information." *Payne v. State*, 493 S.W.3d 478, 486 (Tenn. 2016). Relief under the statute is limited to "errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." T.C.A. § 40-26-105(b). The writ "will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." *Id.* The petitioner must also show he was without fault in failing to present the claim at the proper time. *Id.* Generally, the decision to deny a petition for writ of error coram nobis is entrusted to the trial court's discretion. *Payne*, 493 S.W.3d at 484.

As an extraordinary procedural remedy, the writ of coram nobis may be granted under the following circumstances:

> The ... petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence and (2) must demonstrate that this evidence qualifies as "newly discovered evidence." In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible. In addition to describing the form and substance of the evidence and demonstrating that it qualifies as "newly discovered evidence," the [petitioner] must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment.

*Id.* at 485 (quoting *Harris v. State*, 301 S.W.3d 141, 152 (Tenn. 2010) (Koch, J., concurring in part and concurring in result), *overruled by Nunley v. State*, 552 S.W.3d 800 (Tenn. 2018)).

Recanted testimony may form the basis of coram nobis relief. *State v. Hawkins*, 519 S.W.3d 1, 64 (Tenn. 2017) (appendix). Coram nobis relief based on recanted testimony should be granted when:

(1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*Mixon*, 983 S.W.2d at 673 n.17; *see State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). The prejudice inquiry should examine whether there is a reasonable basis for concluding that, had the evidence been presented a trial, the outcome of the proceeding might have been different. *Vasques*, 221 S.W.3d at 527.

The post-conviction court heard Ms. April Campbell's testimony related to the coram nobis claim,[8] and Ms. April Campbell testified that she realized she was mistaken in her identification of the Petitioner when she saw the real shooter at a club in 2016 or 2017. The real shooter "looked exactly like" the Petitioner. She did not inform anyone that she had seen a man whom she believed to be the actual killer of the victim. The post-conviction court rejected her testimony, concluding that her claim that she had seen the real shooter, who was a "dead ringer" for the Petitioner, years after the crime was not credible.

Coram nobis relief requires the court to be "'reasonably well satisfied'" that the new testimony is true. *Vasques*, 221 S.W.3d at 527 (quoting *Mixon*, 983 S.W.2d at 673 n.17). Here, the post-conviction court rejected Ms. April Campbell's new testimony that she had been mistaken about the Petitioner's identity all these years and that she had only discovered her mistake when she saw the actual killer at a club, a fact about which she remained silent until the post-conviction hearing. This court is generally bound by a trial court's factual findings and credibility determinations. *See Kendrick*, 454 S.W.3d at 457; *Tyrone Chalmers v. State*, No. W2013-02317-CCA-R3-PD, 2014 WL 2993863, at *5 (Tenn. Crim. App. June 30, 2014); *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002) ("The trial court was in a much better position than this court to evaluate the credibility of the witnesses who appeared before it."). The post-conviction court also concluded that the Petitioner failed to establish prejudice because Ms. Williams testified that the Petitioner had a gun and Ms. Janice Campbell witnessed the Petitioner shoot the victim. We note that the Petitioner never contested his presence at the club but asserted he was under a table during the shooting, and there was no evidence that both the

---

[8] We note that the State objected at the hearing to evidence related to the coram nobis claim based on the Petitioner's failure to attach affidavits to the petition, but the trial court heard the testimony, and the State does not renew the objection on appeal. *See State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995); *see also Harris*, 301 S.W.3d at 152 (Koch, J., concurring in part and concurring in result).

- 22 -

Petitioner and another man who "looked exactly like" him were present in the club. Because the post-conviction court did not abuse its discretion in determining that Ms. April Campbell's recanted testimony was not credible and that there was not a reasonable basis to conclude that the evidence might have affected the outcome of the trial, we affirm the post-conviction court's judgment. *See Workman*, 111 S.W.3d at 18 (upholding trial court's denial of relief when it discredited new testimony).

## CONCLUSION

Based on the foregoing, we affirm the post-conviction court's denial of relief.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE